**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | Case No. | 22-20287 (JJT) |
| | ) | | |
| NORMAN A. SPERRY, Jr. | ) | Chapter | 7 |
| | ) | | |
| Debtor. | ) | Re: ECF Nos. | 67, 71, 88, 89, 90, 91 |
| | ) | | |

**MEMORANDUM OF DECISION AND RULING**
**ON UNITED STATES TRUSTEE'S MOTION TO DISMISS**

Before the Court is a Motion to Dismiss filed by the United States Trustee ("U.S. Trustee"), William Harrington, in which he seeks to dismiss the Chapter 7 case of Norman A. Sperry, Jr. ("Debtor") for abuse of the provisions of 11 U.S.C. § 707(b)(2) and (b)(3) (ECF No. 67, the "Motion"). The Motion arises out of a dispute surrounding the conversion of Debtor's case from one under Chapter 13 to Chapter 7. The U.S. Trustee argues that a loan modification on the mortgage on Debtor's primary residence—negotiated postpetition but preconversion—constitutes an increase in Debtor's disposable income such that Debtor's Chapter 7 conversion is abusive. For the reasons that follow, the U.S. Trustee's Motion is granted in part and denied in part.

**I.    BACKGROUND[1]**

On April 29, 2022 ("Petition Date"), the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code (ECF No. 1). Included with the Debtor's petition was a Chapter 13 Plan (ECF No. 2). This is the Debtor's fifth filing for bankruptcy protection, with three of those resulting in a standard discharge (ECF No. 10). The Debtor filed his first bankruptcy in Connecticut in 1992 under Chapter 7, which resulted in a standard discharge on April 21, 1992,

---

[1] The following facts are taken from the parties' Joint Stipulation of Facts (ECF. No 88), save for those facts related to the Debtor's previous bankruptcy filings, of which the Court takes judicial notice of the contents of the dockets of those proceedings.

providing for an unknown distribution (ECF No. 10). The Debtor filed his second bankruptcy in Massachusetts in 2005 under Chapter 7, which resulted in a standard discharge on November 21, 2005, providing for no distribution (ECF No. 10). *See In re Sperry*, No. 05-44796 (Bankr. D. Mass. Nov. 21, 2005). Other information on the Debtor's first two bankruptcy cases is not readily available.

Regarding his subsequent filings, the Debtor filed a third bankruptcy in Massachusetts in 2011 under Chapter 13 (ECF No. 10). In that case, the Debtor's confirmed Chapter 13 plan scheduled secured claims of $27,907.00 (the entirety of which constituted mortgage arrears) and unsecured claims of $71,757.00. The Debtor scheduled an annualized income of $83,948.67, and monthly disposable income of $1,178.80. *In re Sperry*, No. 11-30378 (Bankr. D. Mass. Mar. 11, 2011), ECF No. 6. Although the Bankruptcy Court for the District of Massachusetts confirmed a Chapter 13 Plan authorizing a dividend of 45% to general unsecured creditors, the Debtor voluntarily dismissed that bankruptcy soon after (ECF No. 10). *In re Sperry*, No. 11-30378 (Bankr. D. Mass. Nov. 15, 2011), ECF No. 43.

The Debtor then filed his penultimate bankruptcy in Massachusetts in 2012 under Chapter 13. In that case, the Debtor's original confirmed Chapter 13 plan scheduled secured claims of $51,554.00 (the entirety of which constituted mortgage arrears on the same property as in the 2011 case) and general unsecured claims of $3,104.00. *In re Sperry*, No. 12-31473 (Bankr. D. Mass. Sep. 27, 2012), ECF No. 6. The Debtor scheduled an annualized income of $65,880.00, and monthly disposable income of negative $342.07. *In re Sperry*, No. 12-31473 (Bankr. D. Mass. Oct. 21, 2012), ECF No. 27. A post-confirmation amended Chapter 13 plan, however, notes that the Debtor surrendered the property after confirmation to satisfy the first mortgage, paying approximately $6,014.61 of the arrears. *In re Sperry*, No. 12-31473 (Bankr. D. Mass. Oct.

21, 2013), ECF No. 25. That plan resulted in a 100% dividend to general unsecured creditors and a standard discharge on June 19, 2015 (ECF No. 10). *Id.*

With his most recent Chapter 13 petition, Debtor disclosed that he owns real property and that it is his primary residence located at 25 Pierson Lane, Windsor, Connecticut ("Property"), which is valued at $335,000.00 (ECF No. 1, Schedule A/B). The Debtor also disclosed that the Property was subject to a mortgage to NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("NewRez") which had an unpaid balance of $314,724.00 (ECF No. 1, Schedule D). The Property's NewRez mortgage also carried an arrearage of $104,000.00 (ECF No. 2).[2] The Debtor also scheduled fourteen nonpriority unsecured creditors owed a total of $25,842.00, at least $18,868.00 of which was listed as credit card debt (ECF No. 1, Schedule E/F).

The Debtor has represented that he has an annualized income of $100,003.56 (ECF No. 3 at 2–3). In his Chapter 13 Means Test, the Debtor has claimed a disposable income of negative $190.69 per month (ECF 3 at 6, 7), largely due to the mortgage arrearage as of the filing date and its monthly cure payment of $1,745.86.[3]

On August 18, 2022, the Chapter 13 Trustee Roberta Napolitano ("Trustee Napolitano") filed an objection to the confirmation of the Debtor's initial Chapter 13 Plan for failure to maintain plan payments and failure to demonstrate plan feasibility (ECF No. 20). On August 19, 2022, the Debtor filed a First Amended Chapter 13 Plan (ECF No. 21). On August 24, 2022, Trustee Napolitano again filed an objection to the confirmation of Debtor's First Amended Chapter 13 Plan for failure to make plan payments and failure to demonstrate plan feasibility (ECF No. 23). On October 17, 2022, the Debtor filed a Second Amended Chapter 13 Plan (ECF

---

[2] NewRez filed a proof of claim claiming a mortgage arrearage of $100,529.75. Claims Register, Claim 13.
[3] The Debtor's Chapter 13 Means Test assumed a calculation of making a monthly 1/60th payment on his claimed $104,000.00 mortgage arrearage. *See* 11 U.S.C. § 707(b)(2)(A)(iii)(II).

3

No. 28). On November 17, 2022, Trustee Napolitano filed an objection to the confirmation of the Debtor's Second Amended Chapter 13 Plan for failure to maintain plan payments and failure to demonstrate plan feasibility (ECF No. 33). During the pendency of these iterations of his Chapter 13 plans, the Debtor purchased a 2023 Hyundai Elantra for $39,176.80 (ECF No. 61).

During the Chapter 13 case, the Debtor pursued a mortgage modification agreement with NewRez. On December 6, 2022, NewRez filed a Motion to Approve Loan Modification ("Modification"), which was approved by the Court without objection on January 5, 2023 (ECF No. 37; ECF No. 42). The Modification eliminated the Debtor's $100,529.75 arrearage on the NewRez mortgage and converted and reduced that amount into a NewRez Second Mortgage on the Property in the amount of $68,713.31, which would be non-interest bearing and due, in the regular course, on November 1, 2052 (ECF No. 37 at 4). The Modification resulted in a mortgage balance reduction from $313,985.68 on the Petition Date to $249,059.39; the Debtor's monthly mortgage payment was thereafter reduced from $2,097.38 to $1,493.24. The elimination of the arrearage also eliminated the Debtor's monthly mortgage cure payment of $1,745.86 (ECF No. 3at 6).

On January 31, 2023, the Debtor requested that the Court convert his Chapter 13 case to one under Chapter 7, which was granted on the same day (ECF No. 51; Docket Entry for 1/31/2023). Attorney Bonnie C. Mangan ("Trustee Mangan") was appointed as Chapter 7 trustee (ECF No. 53). On February 20, 2023, the Debtor duly filed the Chapter 7 Statement of Current Monthly Income (Form 122A-1) and Chapter 7 Means Test Calculation (Form 122A-2) (collectively "Chapter Means Test") (ECF No. 56). The Chapter 7 Means Test was calculated using the Debtor's financial situation at the time of the filing of the original Chapter 13 Petition, including the payments to cure mortgage arrearage and the pre-Modification mortgage payments

(*see* ECF No. 56). As such, the Chapter 7 Means Test also listed the Debtor's disposable income as negative $190.69—the Debtor's income at the time of filing the Chapter 13 case.

On May 12, 2023, the U.S. Trustee moved to dismiss the converted case under 11 U.S.C. § 707(b)(1) based on both § 707(b)(2) (presumption of abuse) or, in the alternative, (b)(3) (totality of the circumstances) (ECF No. 67). In his motion, the U.S. Trustee claims that the Debtor's use of his premodification disposable income is an improper calculation and an abuse of the provisions of the Bankruptcy Code. The U.S. Trustee further asserts that the Debtor's Chapter 7 Means Test should be applied to the Debtor's income and expenses at the time of the conversion from the Chapter 13 case to the Chapter 7 case, and is therefore presumptively abusive under 11 U.S.C. § 707(b)(2) (ECF No. 90 at 8–9). In the alternative, the U.S. Trustee argues that the Debtor's actions constitute abuse after the Court's consideration the totality of the facts and circumstances herein (ECF No. 67 at 1).

On June 12, 2023, the Debtor filed a memorandum in opposition to the Motion arguing that the presumption of abuse under the Means Test is to be applied to the Debtor's financial situation on the date of the filing of the original petition, not on the date of conversion (ECF No. 71). After hearing oral arguments on July 6, 2023, the Court granted the parties' request for supplemental briefing and took the matter under advisement. On August 25, 2023, the U.S. Trustee filed a supplemental memorandum in support of the Motion (ECF No. 90). On August 25, 2023, the Debtor filed a supplemental memorandum in support of the objection to the Motion (ECF No. 91).

## II. JURISDICTION

The United States District Court for the District of Connecticut (the "District Court") has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C.

§§ 157(a), (b)(1) and the General Order of Reference of the District Court dated September 21, 1984. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (J).

**III.   STANDARD OF REVIEW**

    *i.   Dismissal Under 11 U.S.C. § 707(b)(2): Means Test*

In considering a motion to dismiss for abuse of the provisions of the Bankruptcy Code under 11 U.S.C. § 707(b)(1), the Court must first consider whether abuse is properly presumed under § 707(b)(2), "a situation that is only present if the debtor is an above median income debtor." *In re Boule*, 415 B.R. 1, 3 (Bankr. D. Mass. 2009). Abuse is presumed under § 707(b)(2)(A) if "the debtor's *current* monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of: (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $9,075, whichever is greater; or (II) $15,150." (emphasis added). If abuse is presumed under § 707(b)(2), then the Court is empowered under 11 U.S.C. § 707(b)(1), on its own or by motion of any party in interest, to dismiss the case or, with the debtor's consent, convert it to a case under either Chapter 11 or 13. This is known as the "Means Test." *See, e.g.*, *In re McKay*, 557 B.R. 810, 815–816 (Bankr. W.D. Okla. 2016) (A "[c]ourt can determine whether the presumption of abuse arises pursuant to the Means Test calculation of disposable income"). The presumption of abuse established under the Means Test may only be rebutted by "demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i).

The relevant date for the Chapter 7 Means Test has been a heavily litigated issue; however, in general:

> The great weight of authority holds that the [M]eans [T]est calculation of § 707(b)(2) is based on a "snapshot" of a debtor's financial situation as of the petition date, without consideration of whether the debtor's expenses may change after that date. *In re Nockerts*, 357 B.R. 497 (Bankr. E.D. Wisc. 2006); *In re Rudler*, 388 B.R. 433, 438 (B.A.P. 1st Cir. 2008); *In re Haar*, 360 B.R. 759 (Bankr. N.D. Ohio 2007). Thus, post-petition changes to a debtor's income and expenses, as well as a debtor's future intentions, while possibly relevant to a determination of abuse under the "totality of circumstances" test under § 707(b)(3), are not taken into consideration when the granting of relief should be deemed to be presumptively abusive under § 707(b)(2). *In re Polinghorn*, 436 B.R. 484, 488 (Bankr. N.D. Ohio 2010).

*In re McKay*, 557 B.R. at 815–16.

There is also some authority in the Bankruptcy Code that independently supports the proposition that the Means Test is to be performed based on the debtor's financial situation on the petition date. For instance, 11 U.S.C. § 541(a) provides numerous references to the fact that the estate holds various interests "as of the commencement of the case." Similarly, § 101(10A) alludes to this when it states that "the date of the commencement of the case" is the last relevant date in the computation of "current monthly income." The importance of the petition date is also noted in the calculation of expenses; § 707(b)(2)(A)(ii)(I) states that expenses are to be determined "as in effect on the date of the order for relief."

Regarding the relevant date for the Means Test calculation, the conversion of a case from one chapter to another "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a); *see also In re Erchenbrecher*, 85 B.R. 42, 44 (Bankr. N.D. Ohio 1988) ("[B]y the clear language of [§] 348(a), the conversion relates back to the initial filing of the bankruptcy petition[,] *i.e.*, the commencement of the case, which, as provided in [§] 541(a), is the date the property of the estate is determined"). In the situation of a conversion from a Chapter 13 case to a Chapter 7 case, the Means Test under § 707(b)(2) is further augmented by § 348(f)(2), which provides that, if the

7

conversion is initiated by the Debtor "in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." A finding of bad faith in conversion would reset the relevant date for the Means Test from the "date of the filing of the petition, the commencement of the case, or the order for relief" to the conversion date. 11 U.S.C. § 348(f); 11 U.S.C. § 348(a).

Accordingly, the Court looks to the mechanical calculation of the Means Test to determine if there is a presumption of abuse that may warrant dismissal or conversion. Correspondingly, the Means Test is generally to be calculated based on the date of the commencement of the bankruptcy case. In converted cases, it is to be calculated on the date of commencement of the original case or, if bad faith is present, on the date of conversion.

    ii.    *Dismissal Under 11 U.S.C. § 707(b)(3)*

If the Debtor passes the Means Test such that there is no presumption of abuse or that the presumption is rebutted, then the Court must determine "(A) whether the debtor filed the petition in bad faith; or (B) [whether] the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse."[4] 11 U.S.C. § 707(b)(3). If the court determines either that the petition was filed in bad faith or, alternatively, that the petition is abusive under the totality of the circumstances, the court is again empowered under § 707(b)(1) to dismiss the case or, with the debtor's consent, convert it to a case under Chapters 11 or 13.

The U.S. Trustee bears the burden of proving abuse under 11 U.S.C. § 707(b)(3) by the preponderance of the evidence. *See In re Perelman*, 419 B.R. 168, 177–78, (Bankr. E.D.N.Y. 2009). "Once a prima facie case is stablished by the U.S. Trustee, the burden of going forward

---

[4] The U.S. Trustee did not raise the issue of bad faith, either on the date of the petition under 11 U.S.C. § 707(b)(3)(A) or on the date of conversion under § 348(f), and this Court, particularly in the absence of persuasive facts, therefore declines to address it.

with sufficient evidence to controvert the prima facia case is reposed in the non-moving party, the [d]ebtor." *Id*. at 178. Because § 707(b)(3)(A) and (B) are governed by different standards, the Court will address each in turn.

      iii.      *Dismissal Under 11 U.S.C. § 707(b)(3)(B): Totality of the Circumstances*

Although this Court's consideration of information on the debtor's financial situation after the petition date is not appropriate in calculating a debtor's Means Test, the Court is allowed to consider that information in its analysis of whether the granting of relief would be abusive under the totality of the circumstances test. *See In re McKay*, 557 B.R. at 815–16. For example, in *In re Perelman*, the U.S. Bankruptcy Court for the Eastern District of New York found that the Means Test was not violated, but still found that:

> Income made available to debtors as a result of surrendering encumbered assets are properly considered as part of a totality of circumstances analysis under § 707(b)(3)(B). No longer burdened with oppressive secured debt payments which consumes approximately 68% of his (pre-tax) income, the Debtor surely should have available consequential monthly income to fund a bankruptcy repayment plan.

*In re Perelman*, 419 B.R. at 178 (citations omitted).

This Court is guided in its analysis of 11 U.S.C. § 707(b)(3)(B) by the factors laid out in *In re Kornfield*, 164 F.3d 778 (2d Cir. 1999). *See, e.g.*, *In re Wise*, 453 B.R. 220, 227 (Bankr. D. Vt. 2011) ("Subsequent to the enactment of […] [the Bankruptcy Abuse Prevention and Consumer Protection Act], this Court and others within the Second Circuit have continued to find *Kornfield* to be the proper standard for assessing the totality of the circumstances under § 707(b)(3)"). "Courts applying *Kornfield* have employed a two-part test, 'looking first to whether the [d]ebtor has the ability to pay a substantial dollar amount or percentage of [his or] her unsecured debts, and then to any other relevant circumstances to determine whether there were any mitigating or aggravating factors.'" *In re Wise*, 453 B.R. at 227 (quoting *In re*

*Fitzgerald*, 418 B.R. 778, 782 (Bankr. D. Conn. 2009)). The court in *In re Kornfield* adopted a non-exhaustive list of fifteen mitigating or aggravating factors that can be considered in determining whether there is abuse under the totality of the circumstances:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay;
(3) Whether the petition was filed in good faith;
(4) Whether the debtor exhibited good faith and candor in filing his schedules and other documents;
(5) Whether the debtor has engaged in "eve of bankruptcy purchases";
(6) Whether the debtor was forced into Chapter 7 by unforeseen or catastrophic events;
(7) Whether the debtor's disposable income permits the liquidation of his consumer debts with relative ease;
(8) Whether the debtor enjoys a stable source of future income;
(9) Whether the debtor is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code;
(10) Whether there are state remedies with the potential to ease the debtor's financial predicament;
(11) Whether there is relief obtainable through private negotiation, and to what degree;
(12) Whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities;
(13) Whether the debtor has significant retirement funds which could be voluntarily devoted in whole or in part to the payment of creditors;
(14) Whether the debtor is eligible for relief under Chapter 11 of the Bankruptcy Code; and
(15) Whether there is no other choice available to the debtor for working out his financial problems other than Chapter 7, and whether the debtor has explored or attempted other alternatives.

*In re Carlton,* 211 B.R. 468, 478 (Bankr. W.D.N.Y.), *aff'd sub nom. Kornfield v. Schwartz (In re Kornfield),* 214 B.R. 705 (W.D.N.Y. 1997), *aff'd sub nom. In re Kornfield,* 164 F.3d 778 (2d Cir. 1999).

### IV. DISCUSSION

The Court's final analysis on the Motion to Dismiss is therefore conducted in two parts. First, the Court must determine whether there is a presumption of abuse under the Chapter 7

Means Test. Second, the Court must determine whether the Chapter 7 case is otherwise abusive under the totality of the circumstances.

        *i.*      *Dismissal Under 11 U.S.C. § 707(b)(2): Means Test*

It is clear from the state of the law that the Means Test is meant to be calculated from the petition date of the original application with very few exceptions. *See In re McKay*, 557 B.R. at 815–16. The Court is therefore bound to apply the Means Test on the date of the Debtor's original unconverted Chapter 13 petition. On the date of the original Chapter 13, the Debtor's income was negative $190.69 and therefore satisfied the Means Test under 11 U.S.C. § 707(b)(2)(A). The Court therefore finds that there is no presumption of abuse under § 707(b)(2).

Although a finding of bad faith on the conversion date could shift the Means Test calculation to the conversion date under 11 U.S.C. § 348(f), the U.S. Trustee has made no allegations or advanced proof of bad faith sufficient to shift this burden and the Court therefore declines to address it. *See In re Perelman*, 419 B.R. at 177–78, ("Once a prima facie case is stablished by the U.S. Trustee, the burden of going forward with sufficient evidence to controvert the prima facia case is reposed in the non-moving party, the [d]ebtor").

        *ii.*      *Dismiss Under 11 U.S.C. 707(b)(3):*

The Court now turns to the totality of the circumstances test under 11 U.S.C. § 707(b)(3)(B). The Court is allowed to consider the debtor's financial situation postpetition in examining whether abuse exists under the totality of the circumstances test. *See In re McKay*, 557 B.R. at 815–16. First, the Court will examine the Debtor's ability to pay a substantial dollar amount or percentage of his unsecured debts. Second, the Court will examine the aggravating or mitigating factors in this case. *See In re Kornfield,* 164 F.3d at 780–784 (2d Cir. 1999).

The U.S. Trustee has made a clear showing that the Debtor, no longer burdened with oppressive secured debt payments that consume a large portion of his disposable income, could now pay a 100% dividend to unsecured creditors (ECF No. 90 at 3). *See In re Perelman*, 419 B.R. at 178. The first prong of the test therefore weighs in favor of abuse.

In proceeding with its analysis, the Court addresses first those factors for which it has sufficient allegations or proof to properly assess. The Court will note at the end those factors for which the Court has insufficient information to properly consider.

Regarding whether the debtor filed the petition in good faith: Although there are no allegations that the Debtor filed the petition in bad faith, it is unclear whether the Debtor filed the initial petition in good faith. On this issue, the Court takes particular note, however, of the fact that this is the Debtor's fifth bankruptcy filing since 1992.

Regarding whether the Debtor exhibited good faith and candor in filing his schedules and other documents: There have been some allegations of insufficiency of disclosure throughout the case but no facts upon which the Court might enter findings thereof. Regardless, the Debtor appears to have attempted to exhibit good faith and candor in his filings.

Regarding whether the Debtor has engaged in "eve of bankruptcy purchases": There are no allegations or evidence of such purchases in the Debtor's filings; however, the Debtor sold his prepetition vehicle and bought a brand new, higher-priced vehicle, taking out a $39,176.80 loan to do so, during the course of this Chapter 13 case (ECF No. 88, at 5)

Regarding whether the Debtor's disposable income permits the liquidation of his consumer debts with relative ease: This is emphatically true. The Debtor could pay the entirety of his unsecured claims under a Chapter 13 plan, amounting to some $25,842.00. Given the substantial increase in the Debtor's disposable income from curing the mortgage arrearage, this

could likely be accomplished in less than two years. If the Debtor is allowed to proceed with his Chapter 7 Plan, these unsecured claims, taken together, would receive a distribution of $0.

Regarding whether the Debtor enjoys a stable source of future income: The Debtor is currently employed, receives a salary in this role, and also receives a relatively stable pension income. Combined, these sources of income provide the Debtor with a gross monthly income of $7,737.55 (ECF No. 88, at 3) The Debtor therefore enjoys a stable source of future income.

Regarding whether the Debtor is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code: The Debtor scheduled claims totaling $368,361.01 (ECF No. 1). This is below the $2,750,000.00 limit required under 11 U.S.C. § 109(e). The debtor also identified his occupation as a Middle School Teacher (ECF No. 1). A role as a Middle School Teacher does not qualify as a stockbroker or commodity broker under § 109(e). The Debtor is therefore eligible to file under Chapter 13. Further, the Debtor has already received adjustments under Chapter 13. Specifically, the Debtor cured his mortgage arrearage and favorably refinanced his mortgage.

Regarding whether the Debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities: The Debtor's disposable income, after the loan modification on his mortgage is high enough that a reduction in expenses is not necessary to address the entirety of the Debtor's current unsecured debts.

Regarding whether the Debtor has significant retirement funds which could be voluntarily devoted in whole or in part to the payment of creditors: The Debtor receives pension payments which have been included in income calculations. No allegations or proof have been put forth that the Debtor has any other significant retirement savings. These sources will no be adversely impacted by a Chapter 13 plan.

Regarding whether the Debtor is eligible for relief under Chapter 11 of the Bankruptcy Code: There have been no allegation or proof that the Debtor is ineligible for any reason and there appear to be no disqualifying factors in the Debtor's filings.

Regarding whether there is no other choice available to the Debtor for working out his financial problems other than Chapter 7, and whether the Debtor has explored or attempted other alternatives: The Debtor has already taken advantage of the provisions of Chapter 13 to obtain a loan modification. The Debtor can resume his Chapter 13 plan to completely address his financial problems or pay his $25,842.00 in unsecured creditors outside the Chapter 13 bankruptcy process. The Debtor can also likely payoff his unsecured debts at once or after a short term.

The Court lacks the evidence to properly ascertain whether: the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment; the Debtor incurred cash advances and made consumer purchases far in excess of his ability to pay; the Debtor was forced into Chapter 7 bankruptcy by unforeseen or catastrophic events; there are state remedies with the potential to ease debtor's financial predicament; or there is relief obtainable through private negotiation, and to what degree.

Regarding other aggravating or mitigating factors that the Court finds important to consider, the Court again notes the Debtor's disturbingly consistent pattern of accumulating high levels of mortgage arrears and unsecured debt before discharging them in bankruptcy approximately every decade.

In summary, the Court finds that the relevant factors suggest a number of aggravating circumstances that would warrant dismissal of the Debtor's Chapter 7 conversion. Although there are factors that indicate in favor of mitigation, they are substantially outweighed by the

aforesaid aggravating circumstances. Therefore, in light of the Debtor's indisputable financial ability to pay a significant dollar amount or percentage of his unsecured debts, as well as the factors enumerated above, the Court finds that the Debtor's Chapter 7 case shall be dismissed within 10 days hereof unless reconverted to a Chapter 13 with consent of the Debtor.[5]

## V.    CONCLUSION

For the reasons set forth above, the Court finds that the U.S. Trustee's motion to dismiss the Debtor's case as an abuse of the provisions of the Bankruptcy Code under 11 U.S.C. § 707(b)(2), based upon a presumption of abuse is without merit. The Court does find, however, that the U.S. Trustee has demonstrated abuse based upon the totality of the circumstances, as required for relief under § 707(b)(3)(B). Accordingly, the U.S. Trustee's motion to dismiss is denied in part and granted in part as set forth above.

**IT IS SO ORDERED,** at Hartford, Connecticut this 6th day of November 2023.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[5] *See* 11 U.S.C. § 707(b)(1) ("… the court, on its own motion or on a motion by the [U.S. Trustee] … may dismiss a case filed by an individual debtor … or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title"); 11 U.S.C. § 706(a) ("The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title."); *see also In re Povah*, 455 B.R. 328, 340–341 (Bankr. D. Mass. 2011) (holding that "'§ 706(a) is phrased as a restriction on the *debtor's* ability to convert a case … [and]… says nothing explicit about the *court's* authority to do so'" (emphasis in original) such that the Court has "discretion to permit reconversion of the Debtor's case to a case under Chapter 13 in appropriate circumstances").